IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANGEL MASSEY,

      Plaintiff,

v.

STATE FARM FIRE &
CASUALTY COMPANY,

      Defendants.

CIVIL ACTION FILE

NO. 1:17-cv-3225-TCB

## ORDER

This case comes before the Court on Plaintiff Angel Massey's

motion [7] to remand to state court.

## I.   Background

This case arises from a state law breach of contract and negligence

action filed by Massey against State Farm and a now-dismissed

Defendant, Corndawgs, Inc. d/b/a ServPro of Clayton County

("Corndawgs"). Massey originally filed this case on March 27, 2017

against both Defendants in the State Court of Clayton County, Georgia.

At the time this case was filed in state court, the parties were non-

diverse under 28 U.S.C. § 1332. Both Massey and Corndawgs were

citizens of the State of Georgia. On July 28, the state court granted

Corndawgs's motion to dismiss based on insufficient service of process,

leaving only State Farm and Massey in the case. State Farm timely

removed the case to this Court. As a result, upon removal the only

remaining parties were diverse: Massey from Georgia and State Farm

from Illinois.

Massey opposes removal in a pleading the Court construes as a

motion [7] to remand. After considering the motion and State Farm's

response, the Court ordered supplemental briefing regarding whether

the "voluntary-involuntary rule" bars removal in this case. The Court

examines whether removal was appropriate in light of the parties'

briefing on the original motion and supplemental briefing pursuant to

the Court's order.

## II.    Legal Standard

A civil action originally filed in a state court may be removed to a

federal district court if the district court has original jurisdiction over

the case. *Id.* § 1441(a). The burden is on the removing party, here State

Farm, to establish federal subject-matter jurisdiction. *Friedman v. N.Y.*

2

*Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. Am. Home Assurance Corp.*, 264 F.3d 1040, 1050 (11th Cir. 2001).

## III. Analysis

State Farm removed this case on the basis of diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). Massey asserts that removal was not proper because the presence of Corndawgs, a now-dismissed Defendant and Georgia resident, defeats diversity jurisdiction. Because the Court agrees with Massey, this case must be remanded.

### A. Removal from State Court

Congress has granted federal district courts original subject-matter jurisdiction over two major categories of civil actions: those that

"aris[e] under the Constitution, laws, or treaties of the United States"—or, federal-question jurisdiction, *id.* § 1331—and those that involve an amount in controversy in excess of $75,000 and that are "between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens"—or, diversity jurisdiction, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citing *id.* § 1332).

When, as here, the purported jurisdictional basis for removal is Section 1332(a)(1)—a civil action satisfying the amount-in-controversy requirement and between "citizens of different States"—there must be "complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

Whether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the complaint is filed and at the time of removal. *See Roecker v. United States*, 379 F.2d 400, 407 (5th Cir. 1967); *Ritts v. Dealers All. Credit Corp.*, 989 F. Supp. 1475,

4

1476 (N.D. Ga. 1997); 15 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 102.21[1] (3d. ed. 2017) ("If a case is filed in state court and a defendant seeks removal to federal court, diversity of citizenship generally must exist both at the time the original action is filed and at the time the removal petition is filed."); *see also Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 776 (5th Cir. 1986) (holding that a district court cannot retroactively create diversity jurisdiction if it did not exist when complaint was filed).

Under the general rules, then, it would appear that removal is barred. Complete diversity did not exist at the time this action was filed in state court. And though it existed at the time of removal, this was only because the non-diverse Defendant, Corndawgs, was dismissed for insufficient service of process. State Farm makes several arguments in opposition to this conclusion, asserting that removal was appropriate.

First, it argues that the Court should not consider Corndawgs's citizenship because it is no longer a named party in the action. But this is incorrect. Though Corndawgs was dismissed, it remains a named, albeit un-served, party prior to removal; its citizenship cannot therefore

5

be ignored. *Cf. Chappell v. SCA Servs., Inc.*, 540 F. Supp. 1087, 1090 (C.D. Ill. 1982) ("The fact that service has not yet been made on the resident defendant is insufficient to allow his citizenship to be disregarded." (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939))).

State Farm also contends that because Corndawgs's dismissal was final, removal is appropriate. This, too, is insufficient. The Court must examine the nature of the state court's dismissal and determine whether, as Massey argues, removal is barred because the dismissal was against her wishes as the plaintiff. This issue involves the voluntary-involuntary rule, which affects removal in cases based on diversity jurisdiction.

## B.    The Voluntary-Involuntary Rule[1]

The voluntary-involuntary rule "is a rule developed in diversity cases 'that if the resident defendant was dismissed from the case by the

---

[1] The Court understands that a question may exist regarding the continuing viability of this judge-made doctrine after a rule change to the removal statute in 1949. *See* 14B WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3723, at 701–19 (2009). But the Eleventh Circuit and the Fifth Circuit prior to October 1, 1981 have both determined that the rule's validity continues. *See Insinga v. LaBella*, 845 F.2d 249, 252 (11th Cir. 1988); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir. 1967). Those decisions bind this Court.

voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's action against the wish of the plaintiff, the case could not be removed.'" *Insinga*, 845 F.2d at 252 (footnote omitted) (quoting *Weems*, 380 F.2d at 546 (quoting Note, *The Effect of Section 1446(b) on the Non-Resident's Right to Remove*, 115 U. PA. L. REV. 264, 267 (1966))).

The policies underlying this rule are twofold. First, there are considerations of finality. If a non-diverse defendant is dismissed by a state court but there remains the possibility that after removal the same defendant could re-enter the suit—for example, because the trial court's dismissal is reversed on appeal—then removal would be a waste of judicial resources. The non-diverse defendant would defeat jurisdiction if re-added to the case and require re-visitation of the court's jurisdiction.

The second underlying policy is a plaintiff's status as the master of his complaint. *See Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("[A]s we have long recognized, plaintiffs are 'the master of the complaint' and are 'free to avoid federal jurisdiction . . . .'" (citation

7

omitted) (quoting *Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2013))). In other words, it is "the plaintiff's right, absent fraudulent joinder, to determine the removability of his case." *Insinga*, 845 F.2d at 253. This is reminiscent of the well-pleaded complaint rule, which focuses on the plaintiff's allegations in the complaint, rather than any contentions in the defendant's pleadings, to determine whether jurisdiction in a federal forum is appropriate. *See id.* (citing cases). Together, finality and the plaintiff's choice operate so as to favor remand whenever diversity jurisdiction is not the result of a voluntary act of the plaintiff.

But this rule is not without its limitations. The voluntary-involuntary rule does not apply when a plaintiff fraudulently joins a defendant for the purpose of defeating jurisdiction. *Id.* at 254 ("Fraudulent joinder is a well established exception to the voluntary-involuntary rule."). The Eleventh Circuit has also concluded that dismissals based on jurisdiction, as opposed to dismissal on the merits, are an analogue to fraudulent joinder that prevent the application of the voluntary-involuntary rule. *Id.*

8

With this background in mind, the Court turns to the parties'
arguments. Massey contends that the voluntary-involuntary rule
prohibits removal in this case because Corndawgs, the non-diverse
Defendant, was dismissed by the state court, i.e., involuntarily. State
Farm makes two arguments in response. First, it argues that Massey's
dismissal of Corndawgs was voluntary. Second, it argues that the
voluntary-involuntary rule should not apply because Corndawgs's
dismissal was jurisdictional within the meaning of *Insinga*. The Court
examines these in turn.

> **1.    Massey Did Not Voluntarily Dismiss Corndawgs**

State Farm argues that Corndawgs's dismissal was the result of
Massey's voluntary act because she did not appeal the state court's
dismissal order. The Court disagrees.

Some courts have equated a plaintiff's decision not to appeal a
defendant's dismissal with a voluntary act by the plaintiff dropping that
party. *See, e.g., Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d
Cir 1980). The courts arriving at this conclusion place heavy emphasis
upon the finality concerns underlying the voluntary-involuntary rule.

9

The Eleventh Circuit, however, has declined to adopt this position. In *Insinga*, the Eleventh Circuit rejected the conclusion that a failure to pursue an appeal is the de facto equivalent of a voluntary act. In so holding, the Eleventh Circuit reiterated that finality is not the sole concern of the voluntary-involuntary rule; finality is a *necessary* but not *sufficient* condition for removability. *Insinga*, 845 F.2d at 253; *accord Self v. Gen. Motors Corp.*, 588 F.2d 655, 657–60 (9th Cir. 1978).

This is also consistent with Supreme Court precedent. *See id.* ("[T]he Supreme Court made it clear that, while finality in the state court as to all resident defendants may be a necessary condition to support removal, it is not a sufficient prerequisite nor is it synonymous with voluntariness[.]" ). More often than not, the Supreme Court's application of the rule involved cases where "the elimination of the resident defendants was not final at the time the issue of the propriety of removal was considered." *Id.* Accordingly, there is no basis for the Court to conclude that Massey voluntarily dismissed Corndawgs simply because she did not pursue an appeal. Nor is the finality of a dismissal the last word on removability.

State Farm would also make much of the fact that Massey has taken no action to add Corndawgs back to the case, for example, by seeking joinder upon removal. Under State Farm's theory, this too should be considered tantamount to a voluntary dismissal.

But the Court will not place so heavy an emphasis Massey's inaction. *Cf. Farah v. Guardian Ins. & Annuity Co.*, No. 17-20303-civ-Martinez/Goodman, 2017 WL 3261604, at *4 (S.D. Fla. Aug. 1, 2017) (collecting cases for the proposition that "when a plaintiff does not oppose a dispositive motion, that inaction is not functionally equivalent to a 'voluntary act' under the voluntary-involuntary rule").

Even if such an inference was permissible, no clear inference from the record is possible regarding Massey's intent with respect to her claims against Corndawgs. Massey has represented by affidavit that the statute of limitations on her claims against Corndawgs has not yet run, and indicated that Corndawgs could again become a factor in the litigation. The evidence is equivocal at best as to why Massey has not re-joined Corndawgs at this time. The Court cannot therefore conclude that Massey's inaction necessarily means she intended to wholly forego

11

her suit against Corndawgs. *See, e.g., Gandy v. Crompton*, 55 F. Supp. 593, 597 (S.D. Miss. 1999) ("While plaintiff's failure to serve [process] may have been unreasonable and without good cause, there is simply no evidence . . . that the dismissal of [non-diverse] defendants was 'voluntary.' Defendant has shown no expression by plaintiff which could conceivably be perceived as a clear and definite intention of discontinuing his claims against defendants . . . .").

Accordingly, the Court holds that it is not enough for State Farm to demonstrate that Corndawgs's dismissal is final as a matter of state law in order to meet its burden to demonstrate removability. Nor will the Court infer from Massey's inaction that she has voluntarily dismissed Corndawgs for purposes of the voluntary-involuntary rule.

### 2. Corndawgs's Dismissal Was Not Jurisdictional Under *Insinga*

State Farm next argues that because Corndawgs was dismissed for improper service—a defect in personal jurisdiction—this was a jurisdictional dismissal barring application of the voluntary-involuntary rule under *Insinga*.

In essence, this is a claim that Massey fraudulently joined

Corndawgs as a party. The Eleventh Circuit has likened a jurisdictional

dismissal to a dismissal based on fraudulent joinder because "it involves

a determination by the court that the resident defendant was never

properly before the court . . . ." *Insinga*, 845 F.2d at 254–55. Fraudulent

joinder "generally requires a showing that the plaintiff had no

possibility of recovering against the non-diverse defendant." WRIGHT ET

AL., *supra* note 1, § 3723, at 705; *Insinga*, 845 F.2d at 254 ("In order to

sustain a fraudulent joinder, a state court must find either that there

was no possibility that the plaintiff could prove a cause of action against

the resident defendant or that the plaintiff fraudulently pled

jurisdictional facts in order to [obtain jurisdiction].").

Not all jurisdictional dismissals, however, should be likened to

dismissals for fraudulent joinder. The Eleventh Circuit's opinion in

*Insinga* held only that jurisdictional dismissals are "akin" to fraudulent

joinder; it did not hold that they are always identical. To determine

whether a particular jurisdictional dismissal falls within *Insinga*, the

Court must go beyond a quote or two lifted in isolation from the

13

Eleventh Circuit's opinion. The underlying rationale of the decision and, more particularly, the voluntary-involuntary rule, must be considered.

*Insinga* referred to jurisdiction in general terms. But not all jurisdiction is created equal. There are generally two types of jurisdiction: personal and subject-matter. The Court believes that differentiating between the two is necessary in order to properly apply the voluntary-involuntary rule and effectuate its underlying purposes. *Insinga*, though not explicitly distinguishing between the two types of jurisdiction, dealt only with a dismissal based on subject-matter jurisdiction, as the non-diverse defendant was dismissed on sovereign immunity grounds. *Cf. Lichtenberg v. Sec'y of the Navy*, 627 F. App'x 916, 917 (11th Cir. 2015) ("If there is no specific waiver of sovereign immunity as to a particular claim, the district court lacks subject matter jurisdiction over the suit.").

Lack of subject-matter jurisdiction with respect to a defendant necessarily entails claims with no possibility of recovery—that is, claims akin to those dismissed for fraudulent joinder. And even though a dismissal on this basis is not the result of the plaintiff's voluntary act,

14

a court is justified in setting aside the voluntary-involuntary rule in this instance, as the rule's underlying policies are no longer as compelling. Finality is of little concern because the action is totally barred, and there is little chance that resources will be wasted on the same issue in the future, or that jurisdiction will be revived down the road. And though the plaintiff has the right to control his case, including jurisdictional structuring, this does not extend to a right to bring impossible claims, which are, "[f]or all intents and purposes," fraudulent. *Insinga*, 845 F.2d at 254.

But the same cannot be said regarding claims against defendants who are dismissed for improper service of process.[2] State Farm is correct that this is an issue of jurisdiction, specifically personal jurisdiction. But service of process is capable of remediation such that the same, non-diverse defendant could be brought back before the Court if served properly. Unlike the dismissal in *Insinga*, it is not so much that an insufficiently served defendant is fraudulently joined—i.e., the

---

[2] The Court does not answer the broader question of whether all dismissals based on personal jurisdiction, e.g., for lack of minimum contacts, would be sufficient to preclude the application of the voluntary-involuntary rule.

defendant could not be properly before the Court. Rather, it is more accurate to say that such a defendant was incompetently, or negligently, joined.

In this circumstance, it is more difficult to justify overriding the plaintiff's choice of forum, or allowing the specter of defeated jurisdiction to arise again in the future. Even if re-joinder of the non-diverse defendant was permissive, judicial economy—part and parcel with finality—is best served by the Court dealing only once with whether complete diversity supporting jurisdiction exists.

Thus, when considering the voluntary-involuntary rule's underpinnings discussed in *Insinga*, the case for suspending the voluntary-involuntary rule is less compelling. There is a meaningful distinction based on the nature of the jurisdictional dismissal at issue, which affects whether the voluntary-involuntary rule should apply. Moreover, finality and the plaintiff's choice are best served by remanding in this case. As a result, the Court holds that the voluntary-involuntary rule applies.

16

The Court acknowledges that this is a close question, and reasonable minds may differ regarding the full import of *Insinga*'s holding with respect to the voluntary-involuntary rule. But this only confirms the Court's conclusion. When doubts regarding jurisdiction exist, they should be resolved in favor of remand. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." (citation omitted)).

## IV. Conclusion

Massey's motion [7] to remand the case is granted and this case is remanded to the State Court of Clayton County, Georgia.

IT IS SO ORDERED this 24th day of January, 2018.

Timothy C. Batten, Sr.
United States District Judge